DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GABRIEL TOLEDO DE LA CRUZ,**
Appellant,

v.

**MAYRA ELIUTH PEREZ GARCIA,**
Appellee.

No. 4D2024-0823

[December 4, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jose A. Izquierdo, Judge; L.T. Case No. FMCE-23-010230.

Timothy L. Arcaro of Children and Families Law Clinic, Shepard Broad College of Law, Nova Southeastern University, Fort Lauderdale, for appellant.

No appearance for appellee.

DAMOORGIAN, J.

Gabriel Toledo de la Cruz ("Father") appeals the trial court's denial of his Hague Petition for the return of his minor child to Mexico. For the reasons discussed below, we reverse.

Father and Mayra Eliuth Perez Garcia ("Mother") are the biological parents of minor child, born April 15, 2013, in Mexico. Mother, Father, and minor child are Mexican citizens. Father and Mother lived together in Mexico with minor child until they separated approximately one year after minor child was born. After their separation, the Mexican judicial authorities issued a child custody order which set forth the parties' custodial rights and child support obligations for minor child. The custody order also contained a *ne exeat* clause which prohibited Mother from removing minor child from Mexico without Father's consent. Minor child lived exclusively in Mexico from birth, until she was taken to the United States unilaterally by Mother in December 2022. At the time, minor child was nine years old.

Upon learning minor child was removed from Mexico by Mother, Father contacted the Mexican Central Authority and, in August 2023, filed his petition for return of the minor child to Mexico ("Hague Petition"), pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"). *See* 22 U.S.C. §§ 9001–9011. In his Hague Petition, Father asserted Mother wrongfully removed minor child from Mexico and retained minor child in violation of his custody rights.

Subsequently, Mother filed an answer to the Hague Petition, raising one defense and one exception to minor child's return: (1) Father did not have "rights of custody" and was not "exercising access rights" with minor child at the time of her removal from Mexico; and (2) minor child was "sufficiently mature and intelligent to object to being repatriated to Mexico." No other defenses were plead in the answer.

In January 2024, the matter proceeded to a bench trial, during which the trial court conducted an in-camera interview with minor child. At the time of the interview, minor child was ten years old and had been exclusively with Mother in Florida for over a year. Regarding her life in Florida, minor child testified she lived in an apartment with Mother and her little brother and was attending school and taking English classes. Minor child enjoyed playing at parks and mentioned wanting to join a football team. When asked what she liked most at school, minor child responded she liked English and field trips.

Regarding her life in Mexico, minor child was asked if there were things she liked and did not like about living in Mexico, to which she answered "yes" with no further explanation. Minor child said that she was "happy" living with both Mother and Father in Mexico. When asked how she felt about Father, minor child answered, "[w]ell, happy, funny" and that she loved him. Similarly, when asked how she felt about Mother, minor child responded, "[f]ine" and "happy" and that she loved her.

When the trial court attempted to inquire as to what Mother had told minor child about the pending proceedings, minor child was hesitant to respond and had to be reassured by the trial court to tell the truth. After the trial court reassured minor child that no one was in trouble and that nothing bad was going to happen to her, she admitted seeing Mother crying and being told by Mother that Father wanted minor child to go back to Mexico. The trial court then asked minor child, "[i]f you could choose where to live. Any place. Country where you used to be. Countryside, wherever. Where would you like to live today," to which minor child responded, "I would like to live with my mom." When asked why, minor

2

child explained, "I have many friends, girlfriends and boyfriends. And I want to go to high school. And there's a trip to Orlando and the teacher is going to take us and we're going to Disneyland." The trial court then asked, "[i]t's perfect if you want to live here, but would you want to see your dad," to which minor child replied, "[w]ell, yeah." The trial court then asked, "[w]ell, how would you like to see him? Would you like to travel to Mexico for a while or would you like to go in the summer? How would you like to see him?" Minor child responded, "[w]ell, on vacation time or something like that." When asked, "[i]s there anything that concerns you or worries you about what's going on today," minor child responded, "I'm afraid that you might be sending me back to Mexico and that I won't be able to see my mom." The trial court asked, "[a]nd if you were to return to Mexico but you could still see your mom and would you feel safer," and minor child replied, "[w]ell, I just don't want to be separated from my mom." Minor child reiterated, "I'll be very thankful to you so I can stay with my mom."

Mother also testified at trial. In relevant part, Mother testified she not only told minor child about the proceedings, but also told her she feared minor child "would be taken back to Mexico and no longer be with me."

Following trial, the trial court issued its order denying Father's Hague Petition. The trial court found Father "successfully established the prima facie case for the wrongful retention of the child," but went on to find that "even though [Father] has established a prima facie case of wrongful removal and retention, the Court finds that [Mother] has one viable affirmative defense: the mature child exception" provided by the Hague Convention. The trial court thereafter made the following findings relating to the mature child exception:

> In this case, during the evidentiary hearing, the undersigned observed the Minor Child as exceptionally bright and articulate. In her interview, she confidently identified Florida as her home, expressing a desire for future vacations in Mexico but not a willingness to live there as her opportunities for growth were more limited.
>
> She calmly and clearly conveyed her reluctance to return to Mexico, highlighting her contentment in Florida where she is able to be around her little brother, attends school, receives English lessons, engages in unique activities, and feels safe. The Minor Child conveyed significant family ties, teachers, and friends in Florida, repeatedly asserting her wish to stay near her younger brother and Mother with whom she shares

3

a close relationship. [Mother] corroborated that the Minor Child is happy and well-adjusted in the United States. The Court also took into consideration the fact that there appears to be significant safety issues in having the child return to Mexico, as noted by [Mother] as to why they are here to begin with.

Considering all of these details, the Court finds the Minor Child is sufficiently mature for her views to be considered. She has effectively communicated her sentiments relevant to the case. Moreover, the Court determines that the Minor Child has raised a particular objection to returning to Mexico based on her attachments to the United States and wish to stay near her younger brother. The Court discerns no undue influence, as the objection stems from Minor Child's firsthand experiences. Consequently, the mature child exception is deemed applicable.

With this finding, the Court concludes that, despite [Father] establishing a prima facie case of wrongful removal or retention, it declines to order the Minor Child's return to Mexico.

Father's subsequent motion for rehearing was denied. This appeal follows.

As the trial court found Father "successfully established the prima facie case for the wrongful retention of the child," the sole issue on appeal is whether the trial court properly applied the mature child exception.

"In reviewing a trial court's determination of facts in a claim brought under the Hague Convention, an appellate court applies a 'clear error' standard of review, while legal determinations by the trial court are subject to de novo review." *De Carvalho v. Carvalho Pereira*, 308 So. 3d 1078, 1082 (Fla. 1st DCA 2020) (citing *Wigley v. Hares*, 82 So. 3d 932, 940 (Fla. 4th DCA 2011)).

If the petitioning parent establishes that a wrongful removal or retention occurred, that parent "is entitled to have the child returned unless the retaining/removing parent can establish one of several enumerated affirmative defenses." *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020) (citing 22 U.S.C. § 9003(e)(1)-(2)). The Hague Convention provides few defenses to the return of a wrongfully removed or retained child, which are narrowly construed. *See, e.g., Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016) ("As the Convention's

4

official commentary has noted, narrow interpretations of the exceptions are necessary to prevent them from swallowing the rule and rendering the Convention 'a dead letter.'" (citation omitted)); *In re Kim*, 404 F. Supp. 2d 495, 511–12 (S.D.N.Y. 2005) (noting that the Hague Convention reflects a strong presumption favoring the child's return, and the "affirmative defenses are meant to be narrow").

One such defense is the "mature child" exception, which provides that the trial court "may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views."  Hague Convention, art. 13; *see also Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1361 (M.D. Fla. 2002).  In determining whether this exception applies, courts primarily consider whether: (1) the child is sufficiently mature; (2) the child has a particularized objection to being repatriated; and (3) the objection is the product of undue influence.  *Colon v. Mejia Montufar*, 470 F. Supp. 3d 1280, 1295 (S.D. Fla. 2020) (citing *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007)).  However, "[w]hile the Hague Convention provides that a court may take into account the views of the children, it is not required to accede to those views.  The exception is discretionary."  *Hirst v. Tiberghien*, 947 F. Supp. 2d 578, 596 (D.S.C. 2013) (internal citation omitted).

## *Sufficiently Mature*

The Hague Convention does not define the term "maturity," nor does it set a specific age at which the child is automatically considered to be sufficiently mature.  Instead, "the determination is to be made on a case-by-case basis."  *Tsai-Yi Yang*, 499 F.3d at 279; *see also Gatica v. Martinez*, No. 10-21750-CIV, 2010 WL 6744790, at *8 (S.D. Fla. Oct. 13, 2010) ("There is no precise age at which a child will be deemed sufficiently mature under the Convention.  Rather, the child's maturity is a question for the district court, to be determined upon the specific facts of each case." (internal citation omitted)).

Here, the then ten-year-old minor child's preference to remain with Mother in Florida was based primarily on three factors: friends, a desire to attend high school, and an upcoming school trip to Orlando.  Such generic and near-sighted responses demonstrate minor child's inability to maturely comprehend or appreciate the long-term impact of her decisions.  *Compare Hirst*, 947 F. Supp. 2d at 598 (finding that a nine-year-old boy and ten-year-old boy were not of sufficient age and maturity because while they were "polite, smart boys," they did not seem "to be especially sophisticated or to have reached a maturity beyond their years"), *with*

*Colon*, 470 F. Supp. 3d at 1296 (holding twelve-year-old child was mature where he "demonstrate[d] fairness and honesty when discussing [his mother]" despite his negative attitude towards her, had "well-developed judgment and a social contract orientation," and was "able to plan past obstacles, rather than becoming frustrated and seeking instant gratification as a less mature child would"). This is especially true considering minor child provided no significant testimony as to her life in Mexico or how life in Mexico differed from life in the United States. *Cf. Romero v. Bahamonde*, 857 F. App'x 576, 583 (11th Cir. 2021) (holding fourteen-year-old sufficiently mature where "she was able to express some positive feelings about life in Chile" and "provide detailed answers demonstrating an understanding of her situation").

Moreover, although minor child also testified that she was afraid to return to Mexico despite having a loving relationship with Father, this fear was based solely on minor child not wanting to be separated from Mother. Minor child's return to Mexico, however, does not necessarily mean she will be separated from Mother as Mother is free to return with her to Mexico. *See Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1259 (M.D. Fla. 2008) (where ten-year-old had desire to see and communicate with his father in Mexico, but feared returning to Mexico for concern of his mother, the court found his fears unfounded, noting "his return to Mexico does not mean he will never see his mother again, as she is free to return with him and seek custody rights through the Mexican courts"). In addition, minor child's response fails to consider how her relationship with Father may change if she remains in the United States.

Finally, even if minor child was deemed sufficiently mature, her opinion on not wanting to return to Mexico would not be conclusive in this case because, at the time of the interview, she had been in the exclusive custody of Mother in Florida for over a year. *See Gatica*, No. 10-21750-CIV, 2010 WL 6744790 at *8 (declining to apply the narrow mature child exception on the basis that the child's views were "not determinative," reasoning "the child is only nine year[s] old and has been under [mother's] exclusive custody for over eighteen months. Naturally, she prefers to remain here in the United States with her mother instead of moving once again and changing her social environment."); *In re S.L.C.*, 4 F. Supp. 3d 1338, 1349–50 (M.D. Fla. 2014) (holding the return of minor child back to Mexico furthers the aim of the Hague Convention, explaining that the child's opinion on not wanting to return to Mexico is not conclusive because she "is only 12 years old and has been under the exclusive custody of [mother] for an extended period of time. Naturally, she prefers to remain here in the United States with her mother instead of moving back to Mexico.").

## Particularized Objection

"In determining whether a child has particular objections to repatriation, courts consider whether the child is expressing merely a preference against return or is 'affirmatively objecting to returning to one country—when living in that country would be unacceptable.'" *Romero*, 857 F. App'x at 583 (quoting *Rodriguez v. Yanez*, 817 F.3d 466, 477 (5th Cir. 2016)). Notably, "[o]nly an objection is sufficient to trump the Convention's strong presumption in favor of return," not a mere preference. *Rodriguez*, 817 F. 3d at 476–77.

Here, when asked by the trial court if she would feel "safer" returning to Mexico if she could still see Mother, minor child responded, "I just don't want to be separated from my mom." Thus, minor child's only fear of returning to Mexico was being separated from Mother. Contrary to the trial court's findings, minor child did not testify she was unwilling to live in Mexico, that it was unsafe to live in Mexico, or that her opportunities for growth were limited in Mexico. Under these circumstances, minor child's desire to not be separated from Mother was a custodial preference, not an affirmative objection to returning to Mexico. *Compare Garcia v. Pinelo*, 808 F.3d 1158, 1169 (7th Cir. 2015) (child's statement that "he preferred to stay in Chicago" was not an "object[ion] to being returned to Mexico"), *and Tsai–Yi Yang*, 499 F.3d at 279 (agreeing that child's "generalized desire to remain in Pittsburgh" was insufficient "to invoke the exception"), *with Colon*, 470 F. Supp. 3d at 1296–97 (minor child raised particularized objection where he testified that he did not want to return to Guatemala because of his fear of gang members, his strained relationship with his father which included physical discipline, and because he believed he had better opportunities in the United States).

## Undue Influence

Finally, to determine if the particularized objections are the product of undue influence, the court must assess: (1) "the nature of the child's objection;" and (2) "the behavior of the custodial parent." *Colon*, 470 F. Supp. 3d at 1298. "[C]ourts place great weight on whether the objection is based on the child's firsthand experiences." *Romero*, 857 F. App'x at 583.

Here, even if minor child had raised a particularized objection, the objection clearly was the product of Mother's undue influence. For example, in her sworn response to Father's Hague Petition, Mother stated that after telling minor child about the petition, minor child began experiencing fear and anxiety about returning to Mexico and thereafter

7

refused to speak to Father. Mother also testified at trial that she told minor child about the legal proceedings and about her fears of minor child being returned to Mexico. Minor child likewise testified at trial that she witnessed Mother crying, and that Mother told her Father wanted minor child to return to Mexico. Thus, Mother's conduct clearly unduly influenced minor child's opinion about returning to Mexico.

Based on these facts, we hold minor child's testimony was insufficient to invoke the mature child exception. Accordingly, we reverse and remand for the trial court to grant Father's petition for the return of minor child to Mexico.

*Reversed and remanded.*

LEVINE, J., concurs.
ARTAU, J., concurs in result only.

*　　　*　　　*

**Not final until disposition of timely filed motion for rehearing.**